Bolland, B.,
concurred.
So in Duncuft v. Albrecht, 12 Sim. & S. 189, it was held that a parol agreement for the sale of railway shares is valid, for they are neither an interest in lands, nor goods, wares or merchandise, within the statute of frauds.
A careful examination of the adjudications upon the subject has 'brought us to the conclusion that, according to the weight of authority, the shares in question are personal property. In the early English cases the distinction, now well understood, between the property of a corporation and *the rights of its members, ■ does not seem to have been taken, and it appears to have been .assumed that each shareholder had an estate in the corporate prop *307 ■erty, and that, consequently, if that property was real, his share was also realty. But the eases we have cited abundantly show that the distinction above mentioned is now fully recognized in England, and that the property of a corporation may bo mainly, if not wholly real, and yet the shares of its members be personalty. This may possibly be an innovation upon the ancient principles -of the common law, but it is not more so than has taken place in the case of ordinary partnerships. Thus the old doctrine seems to have been that there could no partnership, properly so called, in -land, but the contrary doctrine is now universally held; and that a widow of a deceased partner is not dowable in lands which the firm owned and regarded as partnership stock, is settled by numerous decisions, among which are the cases in 1 Ohio, 535, and 8 Ohio, 328. As to the Connecticut caso, Welles v. Cowles, there is possibly no necessary conflict between it and the view we take of the present case. There the right to tolls may be said to have arisen wholly out of realty, the turnpike road; but in the case at bar, the profits of the company accrue from real and personal property, and personal sei’vices. The turnpike company did not carry either goods or persons. It furnished no vehicles for the transportation of either, and had no care of or responsibility for either. It merely allowed a transit over its road upon the payment of a toll. But a railway company is a common carrier. It furnishes not simply a road, but also the conveyances that pass over it; it undertakes the transportation of passengers and freight, and incurs the responsibility of a common carrier as to both.
It was therefore justly said by Parke, B., in the quotation before given, that the interest of each individual shareholder is a share of the net produce of both real and personal property, (and he might have added, of personal services,) when brought into one fund. But we would not be understood as ^approving the decision in Welles v. Cowles, for we are of opinion that shares in .an incorporated turnpike company, as well as in a railway corporation, are personal property. The same distinction we have drawn between a turnpike and railroad company, may be drawn between the latter and the Avon navigation case, and the cases of tolls upon fairs and markets, and rents issuing out of realty. And this distinction seems to be taken by G-reenleaf, in the quotation hereinbefore made. As to the case in 4 Watts, it is enough to say that it does not appear that the bridge builders were a corporation, or *308 that they intended to convert the bridge and right of taking tolls-into a-stock. The decision in 6 Dana, 107, is certainly directly opposed to our views. The court in that case seems to have wholly overlooked tho distinction between the right of the company and the right of the shareholder, and to have concluded that if the company’s franchise of taking toll was an incorporeal hereditament, springing even in part from the realty, the shareholder’s interest could not be personalty. Indeed, the court call the shareholder’s right a franchise. Now, I imagine that it is the artificial being, the corporation, and not the individual shareholder, that has the franchise, and possibly it is not immaterial whether the toll arises wholly out of realty, or partly out of realty and partly out of personalty. “An annuity,” say the court, “though only chargeable upon the person of the grantor, is an incorporeal hereditament, and though the owner’s security is merely personal, yet he may have a real estate in it,” citing 2 Bl. Com. 40. True, such-an annuity is realty so far as descent is concerned, or, more properly speaking, though personal in itself, it descends as if it were realty, the reason of which is that it is limited by the grant to the heir, otherwise it would not be a hereditament. The authorities-cited by the defendant show conclusively that it is only as regards descent that it is considered as realty. But unless there is some provision in the charter of the Lexington and Ohio Railroad Company, limiting the stock to the heirs of the stockholder, the illustration put by the court is not in point.
*It must be admitted, however, that the definition of Lord Coke, cited with approbation in Buckeridge v. Ingram, sustains the position that the franchise was a tenement savoring of the realty; for, in the language of Coke, it was “ exerciseable within lands.” And, as before stated, we prefer to place our decision upon the distinction between the estate of the corporation and the individual rights of its members, rather than upon a distinction between the cases in which the profit arises wholly out of realty, and those in which it springs partly from realty and party from personalty, though this latter distinction seems to receive much support from both reason and authority.
One more inquiry remains: Is the question before us affected by our statute law? We have seen that the shares in all companies, subject to the provisions of the general railway act, are declared by it to be personal estate; but there is no such express legislative dec *309 laration respecting shares in other companies. Nevertheless, a review of our statutes will show that the general policy of the state has been to treat shares in incorporated companies as personalty. 'They are recognized as such in several acts of the legislature, and the distinction between the estate of the company and the individual rights of the stockholder seems to have been taken at an early day. Thus, by the act of February 8, 1826, amendatory of the general turnpike law (Swan’s St. 982), the right of turnpike companies to take tolls was subjected to sale on execution to pay corporate debts, but the shares of the members have never been thus subjected to satisfy individual debts. On the contrary, the mode of proceeding as to such shares is by bill in chancery, filed under the 16th section •of the chancery act of 1831 (Swan’s St. 704), which gives the court power to decree a sale of “ any interest, shares, or stock,” owned ■by a judgment debtor, 11 in any banking, turnpike, bridge or other joint stock company;” thus placing these shares, in this respect, in the same category with “ choses in action,” which are, by the same section, subjected in the same way.
* Again: Ever since the ordinance of 1787, a deed, duly executed, and acknowledged or proved, has been necessary to convey a legal title to any land, tenement, or hereditament in Ohio (certain leasehold estates excepted), and hence, if a turnpike, or railway share is a “ tenement,” as held by the courts of Connecticut and Kentucky, the legal title to it can not be transferred without such -deed. Thus, in Buckeridge v. Ingram, before cited, it being decided that the shares in the “ Avon navigation ” were real estate, the master of the rolls held that they did not pass by a codicil attested ■by but two witnesses, the statute requiring the attestation of three witnesses to a will devising realty. But in this state it has never been considered necessary that a transfer of turnpike or railway shares should be by deed. The practice has been almost, or quite, universal to make the transfer by an ordinary assignment, and were we now to hold that no legal title has thereby passed, there is no •telling the amount of mischief our decision would effect. It may be proper here to remark, that if the charter.requires the assignment to be made on the books of the company, it must, perhaps, be so made in order to convey the legal title; but it is a little singular that no such provision is found in the general turnpike or railway acts, or in any turnpike or railway charter that has come under our observation.
*310 Again: The “ act regulating dower” provides “that the widow of any person dying shall be endowed of one full and equal third part of lands, tenements, and real estate of which her husband was seized, as an estate of inheritance, at any time during the coverture.” (Swan’s Stat. 296.) It follows, that if turnpike and railroad shares are real estate, every widow whose husband was, at anytime during-the coverture, the owner of such shares, is entitled to dower therein, although he may have sold and transferred the same; unless the transfer was by deed of the husband and wife, duly executed, attested, and acknowledged. We can not imagine that the legislature-ever intended any such thing.
*A reference to the tax laws will show that turnpike and railroad shares have never been treated, for purposes of taxation, as real estate. It would be an unnecessary consumption of time and space to comment on these laws in detail. I will only refer to the second section of the act of March 2, 1846 (44 Ohio L. 85), in which definitions are given of real and personal property. The-terms “real property” and “land,” are declared to mean and include not only the land itself, whether laid out in town lots or-otherwise, with all things contained therein, but also “ all buildings, structures, and improvements, trees and other fixtures of whatsoever kind thereon, and all rights-and privileges belonging, or in anywise appertaining thereto, including all stoves in any building belonging to the owner of such building, and used instead of fireplaces.” Under the head of “personal property,” various things are enumerated, among which are: “ the capital stock, undivided profits, and all other means, not forming part of the capital stock, of every company, whether incorporated or unincorporated, and' every share, portion, or interest in such stock, profits, or means, by whatsoever name the same may be designated.”
At the same session of the legislature, the “act relative to incorporations for manufacturing, and other purposes ” (44 Ohio L. 37), was passed. This act embraces manufacturing and mining companies, and gives them very large powers of buying, holding, and conveying any lands, tenements, etc. Yet, although the property of some of them, as, for instance, mining companies, must necessarily consist almost wholly of lands, it is nevertheless declared that the stock of the company shall be deemed personal estate, and shall be transferred in such manner as shall be prescribed by the by-laws of the company.
*311 It is thus apparent that the general policy of our laws is to treat shares in incorporated companies as personal estate, and that whenever the mind of the legislature has been specially directed to the subject, it has settled all doubts by an express declaration to that effect.
*In whatever way we view the case, whether upon adjudication, reason, or our statute laws, we arrive at the conclusion that, the shares in question are personal property. The bill must, therefore, be dismissed.

Bill dismissed.